Good morning, Your Honors. May it please the Court, my name is Harmeet Dhillon, and I represent the appellant Ferdinand Reynolds. Mr. Reynolds is a prisoner in California State Court who filed a Section 1983 civil rights action alleging indifferent treatment, and he was denied the opportunity to obtain his legal papers that he had prepared during the four years of preparation for his case. He seeks a new trial in this appeal. The four factors that the Ninth Circuit has established for these reviews of a denial of a motion for a continuance are, in the United States v. Flint case, diligence, the likelihood of usefulness of a continuance, inconvenience to opposing parties and the witnesses in the court, and finally, prejudice to the appealing party. These four factors are taken together with the weight to be given to each factor based on the showings on the other factors. No one factor is dispositive, and failure to establish any one factor is also not dispositive of the test. Well, you start out by saying he was denied the opportunity. Was he really denied the opportunity, or did he just not avail himself of the opportunity he was given? Your Honor, his position is that he was denied the opportunity, and this may be the case because as a pro se litigant and a jailhouse lawyer, he was not aware of the distinctions between his right to have all of his property with him and his right to only have his legal papers. Separately, he also took the position in the limited one-sided hearing that he was offered that he was not allowed at all to go back to his cell to obtain his different files that he had secreted in different parts of his cell. At this hearing, which he did not have notice of because of the circumstances admittedly, he was not allowed to call witnesses. His only opportunity was to cross-examine one of the officers, and the record reflects, Your Honor, that he specifically mentioned at the hearing that he would have liked to have been able to call another correctional officer and that he would have liked to have been able to call witnesses in the dining area who witnessed the interaction with the correctional officer where Mr. Reynolds states he was denied the opportunity to return to his cell to obtain his materials. So we do not believe he had an effective hearing. It was a one-sided hearing for which he had no notice or ability to call witnesses himself. And finally, at that hearing, none of the factors that are the factors in the United States v. Flint case were actually found or established.  But if we've actually heard the evidence found the officer credible, isn't that credibility determination essentially unreviewable? No, Your Honor, because it doesn't cover all of the factors here. The credibility of that one correctional officer is one fact that goes to one of the factors, the first factor that I mentioned, the diligence. Diligence. Yes, Your Honor. When you look at that factor and the other facts under that factor as well as the other factors and look at the cases in the Ninth Circuit that hold that, even a lack of diligence such as in the 2.1, 2.61 Acres case, a complete lack of diligence in that case where a corporation failed to maintain its corporate status for 14 years was found, yet the court found that the other three factors weighed in favor of the continuance because there was no material inconvenience to the parties, there was significant prejudice to the company not allowed to review its status, and the usefulness was clearly demonstrated that a short continuance would have been dispositive. Counsel, you must be talking about a different case than the one I understand we're talking about here. You mentioned your client is a good jailhouse lawyer. I agree with you. He was pretty smart. This is not the first game for him. He's done it before. And he was given an opportunity, according to the record, to go around, search for things. The officer volunteered to go back and get it for him. He didn't want that. There were people waiting to testify. They were ready for trial. There was inconvenience. And, you know, some people would say he was gaming the system. I don't know. But aren't we looking at an abuse of discretion standard here on the part of the trial judge? Yes, Your Honor. It is an abuse of discretion standard. And respectfully, the diligence factor goes to his preparation for trial and whether or not he was gaming the system, to use the words that Your Honor used. And there was no finding by the judge, by the magistrate judge, that he was attempting to game the system. Does there have to be? I believe there does have to be, Your Honor. There has to be a finding. Well, if it's per se gaming. But each of the factors, each of the four factors, whether they were referred to per se as part of the four factors was considered. Each of them is referred to in the record. And at least by my lights, at least three of the four clearly favor the State in this case. What am I missing? Well, Your Honor, like I said, the diligence. The record reflects that this is a prisoner who worked very hard for four years to bring his case to trial. He took depositions. He prepared, according to his notice of appeal, 30 different files, including an opening statement, a closing statement, witness outlines. He was ready to go to trial. This was not a situation where he was attempting to delay the trial. He has no reason to delay the trial. He was seeking judgment in his favor in this case. But help me with this. The CR 67, there was a finding that the plaintiff had given ample opportunity in which to retrieve his legal materials. The officer gave ample opportunity and stressed and even afforded Mr. Reynolds the opportunity to get his legal materials, both personally and the officer agreed to get them for him. Those offers were declined. What are we to make of that? My client, Your Honor, was not permitted to call witnesses at that hearing or to establish a record of his facts in that hearing. And he told his side of it, didn't he? He did, Your Honor. But if you're looking at a credibility determination, he would have had the opportunity and he stated on the record that he would have liked to have called the other correctional officer. He was denied the opportunity to do that. Only the defense in that case was allowed to call the witnesses they wanted to call. And that respectfully does not meet the standard when you look at the cases, including other cases where the prejudice would have been much more significant. For example, the United States v. Clone case in the Ninth Circuit, where a case had been going on for five days and there had already been two continuances granted in that case due to the illness of the defendant's son. And yet in that case, this Court held that the fact that the Court refused to grant a continuance late in the trial was sufficient to require that the verdict against the defendant be overturned. But are there other factors in that case, though, were there not, that we don't find here? Well, one of them is that there had been two prior continuances. There were zero continuances before this case. But I'd like to focus on prejudice for a moment. If you look at the evidence at the actual trial, it's hard to make the leap that being able to retrieve his papers actually would have made any difference at trial. The dentist had called experts. There was overwhelming evidence. The fact that he had 35 or 40 questions written out strikes me that that would not have made any real difference. And so really I'd like to understand your prejudice argument. Yes, Your Honor. Well, my client, instead of the 30 files of legal papers that he had prepared for over the four years for his case, was given a piece of paper and two pencils by the Court to prepare his case. In the clone case that I just mentioned, Your Honor, the Court found that even material changes in the demeanor of the testifying witness, the defendant in that case, would have been sufficient prejudice to allow the jury to conclude that because he was shaken up because of his son's illness, because he was not speaking in the same tone as before, that was sufficient prejudice. Any lawyer in this courtroom, Your Honor, would be at a loss to try a case with two pencils and a piece of paper that they had prepared for four years. When you're talking about a pro se litigant faced with the same circumstances, the prejudice must be assumed. But I think all the exhibits that he wanted to offer were allowed to be offered. I think he didn't intend to call any further witnesses. When you look at the trial record itself, it's, again, hard to understand what difference it could have made. Well, Your Honor, the cases cited demonstrate that the level of prejudice is a much lower standard than the high level of clear prejudice, actual and substantial prejudice in the case cited by the government. And if I may, Your Honor. Yes, sir. What additional questions would your client have asked? Did he make an offer? Did he proffer any questions to the Court, what he would have done if he had an opportunity to ask them? No, Your Honor. I can't say that there are questions that he would have asked that he was not able to because he didn't have his notes. But the record does reflect that at the beginning of his examination of the main witness, he said he had 15 questions to ask. Yet, given the fact that he did not have his papers and his outline in front of him, he only ended up asking three of those questions. So I can't point to specific questions, but I can say that I myself as a lawyer would not be able to remember 15 questions from a witness in my memory. Thank you very much. Thank you, Your Honor. We've got one. Good morning, Your Honor. Jose Zaldan Cepeda, Attorney General's Office for Defendants. First, I'd like to see if there's any specific questions that the panel would like me to address. If not, I just wanted to emphasize two points. In terms of the purported inability of the plaintiff to call any witnesses at trial, this took place as the jury was about to come in and the judge was about to start the  case, it was actually very difficult for Magistrate Judge Boone to even arrange for the testimony of the correctional officer. And it was apparent that these purported witnesses that Mr. Reynolds wanted to bring in would not have added anything because there wasn't really a dispute about his ability to get his documents. There were four witnesses that were there, right? At the trial, yes. At the trial, yeah. The second point I wanted to make. I didn't understand. Were you talking about the hearing or the trial? Because your adversary made a point that at the hearing about the loss of the papers, he wanted to call other corrections officers and he wasn't permitted to. So I thought her argument, maybe her strongest argument, is that he wasn't given full rights at the hearing. That's what I wanted to address, Your Honor. Let me go ahead and clarify. At the hearing, the district court had a chance, because of the nature of the hearing and because the jury was waiting and managed to get some telephonic testimony from a correctional officer. There has been no offer of proof as to what additional evidence other than the testimony of other inmates would have added to this particular question. But other he wanted to call another correctional officer. I think he said both. I think Mr. Reynolds below said both. But the fact of the matter is there wasn't really a factual dispute. The correctional officer said that the plaintiff had an opportunity to get his papers and the plaintiff confirmed that in his version. He just thought that he should also be allowed to gather his other personal property. So that would not have really added anything to the court's factual findings, which in any event are reviewed for clear error. The second point is on prejudice. And that's really the weakest point for plaintiff. There has been nothing pointed to in terms of additional evidence that he could have developed. This was a straightforward factual scenario. It involved one incident, two individuals. It's not as if there were any particular documents that were left out of the record. In terms of the Clohan case, like Judge Smith pointed out, the Clohan case is a very extreme situation where you have a criminal defendant who was forced to testify while his son was on his deathbed, and that's when he was not at continuance. And the testimony of the defendant in that case was key given that the credibility was at issue. So given this and the fact that the record demonstrates that Mr. Reynolds was able to acquit himself actually pretty well at trial, he did a pretty good job at trial under the circumstances, it was a straightforward factual scenario. There has been no showing of prejudice. And given the broad abuse of discretion, the broad discretion that the district courts are granted, there was no error, and we'd urge the Court to affirm. Thank you. I have a question. Thank you. Now, you went over your time, but because he didn't use all of his, we're going to give you a minute for rebuttal, okay? Normally you have to reserve that, but we're going to give you a minute. Thank you, Your Honors. With regard to the prejudice standard, as I mentioned at the end of my first session, the prejudice standard that we're talking about here is a lower prejudice standard than the prejudice standard that may apply in some other circumstances, such as denial of the right to counsel of one's choice and so forth. And in the Cologne matter, it was an extreme case, of course, but in the record in this case, my client established on the record that he was only able to give, as he said, 50 percent of his effort. He didn't have his questions written down. Let me ask you this. It kind of ties to what I said before. What questions would your client have asked that he did not ask, that he didn't make a proffer, as far as I can tell, to say, you know, I have this material now. This is what I would have asked. This is important. This is all speculation at this point. As was pointed out, you know, this involved one incident with two people, pretty confined. It wasn't an ongoing thing. He had an opportunity to question, did a pretty good job. You may want to consider the bar after he gets out. But the reality is that he just didn't make any showing as to how he really was prejudiced here, did he? Your Honor, he mentioned that he had impeachment materials that he would have liked to have used at trial, and, of course. What was that? Transcripts of depositions, materials like that. The record is not very precise on that, Your Honor. He simply said. Okay. That you found in preparing for this that would have been helpful to him to impeach any of the witnesses. Your Honor, I can't say that I did. Okay. All right. Any other questions of the panel? Thank you both.  The case has been argued as submitted. Thank you, Your Honor.
judges: Fernandez, M. Smith, Scheindlin